**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WM. WRIGLEY JR. COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 04-cv-346 |
| | ) | |
| CADBURY ADAMS USA LLC, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of the parties' efforts to develop chewing gums that combine menthol, a cooling agent that produces a pleasant cooling sensation in one's mouth, with another cooling agent. Menthol, much like litigation, grows bitter in higher quantities. In order to reduce the bitterness (of the chewing gums) and hold onto the cooling sensation, the parties added different cooling agents to menthol for use in their chewing gums. Plaintiff, Wm. Wrigley Jr. Co. ("Wrigley"), used a cooling agent known as WS-23, and Defendant, Cadbury Adams USA LLC ("Cadbury"), used a cooling agent known as WS-3. On June 26, 2009, the Court issued a 65-page memorandum opinion and order (the "June Order") [295], which invalidated Claim 34 of Wrigley's '233 patent. Claim 34 described, in amounts spelled out in the patent, a chewing gum made up of gum base, bulking and sweetening agent, and WS-23 combined with menthol.

Before the Court is Plaintiff's motion for reconsideration [296] of the Court's June Order, which invalidated Claim 34 on anticipation and obviousness grounds.[1] As set forth in greater detail below, Plaintiff's motion is denied, for reasons that have as much to do with our adversary

---

[1] Citations to the briefs submitted by the parties are given as "Wrigley Mem." [298] and "Cadbury Mem." [306].

system of litigation as with patent law. The adversary system of litigation relies on parties to make their cases by squarely presenting issues to trial courts and by citing legal authorities that situate a case within the case law on a given topic: "[The law forum] requires the presentation of competing examples. The forum protects the parties and the community by making sure that competing analogies are before the court." Edward H. Levi, AN INTRODUCTION TO LEGAL REASONING 5 (1949). These principles are longstanding, can be found in Blackstone's Commentaries (*Horne v. Flores*, 129 S.Ct. 2579, 2617 (2009) (Breyer, J., dissenting)), and are often reiterated by the Supreme Court. See, *e.g.*, *Greenlaw v. United States*, 128 S.Ct. 2559, 2564 (2008) (restating the general principle that our "adversary system is designed around the premise that parties know what is best for them"); *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 357 (2006) (distinguishing the adversary system from the "sort of magistrate-directed, inquisitorial legal system" adopted in other countries); see also *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1324 n.5 (Fed. Cir. 2003) (concluding that a litigant forfeited an issue in the trial court). Wrigley's motion, or rather its resolution, reveals the importance of these principles, particularly in litigation that is laden with complex issues and accompanied by lengthy briefs and voluminous records. *Cf.* also *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1356 (Fed. Cir. 2002) (stressing the role of advocacy as an aid to the court in resolving "difficult cases involving complex issues of law").

I.      **The June Order**

The Court issued the June Order on June 26, 2009, in response to several motions by the parties. Two rulings in the 65-page opinion are the subject of Wrigley's motion for consideration. Wrigley challenges the Court's determinations that (1) Claim 34 was anticipated by the Shahidi patent and (2) Claim 34 is obvious.

## II.    Legal Standard

A motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). A motion to reconsider also may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Id.* By contrast, because judicial opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure" (*Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)), "motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling." *Zurich Capital Mkts., Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005). In view of these exacting standards, it is not surprising that the Seventh Circuit has emphasized that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

## III.    Analysis

### A.    Anticipation

According to Wrigley, the Court (1) ignored the factors spelled out in *In re Wands* (858 F.2d 731 (Fed. Cir. 1988)) and similarly failed to draw factual inferences in Wrigley's favor, and (2) applied the wrong standard for anticipation. The Court respectfully disagrees: Wrigley is incorrect with regard to its first contention and too late with regard to its second contention.

### 1.    Anticipation and the *Wands* Factors

In order for a prior art reference to be enabling, the prior art reference must teach those in the art to "practice the invention without undue experimentation." *Novo Nordisk Pharm., Inc. v. Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005) (citation omitted); see also *Elan Pharm., Inc. v. Mayo Found. for Med. Educ. & Research*, 346 F.3d 1051, 1055 (Fed. Cir. 2003) (routine experimentation is permissible and undue experimentation is determined with respect to the viewpoint of one with ordinary skill in the pertinent art).  Undue experimentation is a legal determination reached by considering underlying factual findings.  *Id.*  In *In re Wands*, the Federal Circuit taught that among those considerations were eight illustrative factors: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.  858 F.2d at 737.

But these factors do not exist for their own sake.  Rather, they are aimed at the ultimate inquiry, which constitutes a reasonableness standard that gives "due regard for the nature of the invention and the state of the art."  *Wands*, 858 F.2d at 737.  "In *Wands* the court observed that 'the test is not merely quantitative, since a considerable amount of experimentation is permissible, if it is merely routine, or if the specification in question provides a reasonable amount of guidance with respect to the direction in which the experimentation should proceed.'" *Mayo Found.*, 346 F.3d at 1055 (quoting *Wands*, 858 F.2d at 737).  That fact-laden lodestar, and Wrigley's failure to orient its arguments and evidence toward it, was critical to the outcome in the June Order.  In particular Wrigley did not cite supportive record evidence with regard to the factors themselves, and Wrigley did not tie its arguments to the nature of the invention and the

state of the art. Because Wrigley had the burden of marshaling evidence of non-enablement (June Order at 23 (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003))), summary judgment was appropriate.

Wrigley argues first that the Court improperly excluded *Wands* factors from the analysis. Specifically, Wrigley seizes upon the following statement in the June Order, which Wrigley altered with brackets: "anticipation analysis requires no [] direction or guidance." Wrigley Mem. at 2; see also June Order at 26. According to Wrigley, the Court committed legal error by expressly excluding "direction or guidance" from consideration.

Wrigley has taken the quotation out of context, although the Court agrees that it might have worded this portion of the opinion with greater clarity. In the Court's discussion of "direction or guidance," the quoted language compared the obviousness analysis with the anticipation analysis. In pertinent part, the Court observed: "An obviousness analysis requires some suggestion or motivation to combine prior art teachings in a way that would render the patented subject matter obvious, but an anticipation analysis requires no such direction or guidance." June Order at 26 (citations omitted). In other words, the opinion says that "direction or guidance" is not an essential ingredient in the anticipation analysis—"requires," as used in the June Order, meant "requires, in order to win." That reading is consistent with *Wands* and subsequent case law in the Federal Circuit. "[I]t is not necessary that a court review all the *Wands* factors to find a disclosure enabling. They are illustrative, not mandatory. What is relevant depends on the facts [of each case]." *Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991). The point that the Court intended to convey in the June Order is that, given the facts in the record on undue experimentation as taken from "the viewpoint of one of ordinary skill in the art" (June Order at 23 (citation omitted)) and the Court's conclusion on

enablement, Wrigley's presentation of arguments and evidence on the question of direction or guidance was insufficient to stave off summary judgment. Moreover, the June Order did address the question of direction or guidance. In particular, the June Order notes that the Shahidi patent describes chewing gums as preferred embodiments of the claimed invention. June Order at 9, 25. Shahidi also listed cooling agents as a "preferred nonessential" component of the claimed invention. *Id.* at 10, 25. The cooling agents included those listed in the Rowsell patent, and Rowsell lists WS-3 and WS-23 as "particularly preferred cooling agents." *Id.* at 10, 25.

Besides the argument that the Court ignored *Wands* factors, Wrigley also intimates that the Court's exclusion of "direction or guidance" from consideration was illustrative of a larger problem: according to Wrigley, the Court resolved disputed factual questions in favor of Cadbury. The Court respectfully disagrees. Because Wrigley's motion for reconsideration suggests that the Court failed to consider evidence, the Court will discuss in greater detail the evidence that was before it at the time of the June Order.

Wrigley's argument that the Shahidi patent does not anticipate Claim 34 spans almost exactly two pages (although earlier in the brief, Wrigley included a section in which it discussed in general language the standards governing anticipation). The argument related to Shahidi appeared under the heading "Shahidi Does Not Anticipate Claim 34 Because One of Ordinary Skill in the Art Could Not Practice the Invention of Claim 34 Without Undue Experimentation." The Court sets out Wrigley's arguments below in full, emphasizing in boldface type (where made explicit) which of the *Wands* factors Wrigley aimed to address in each paragraph[2]:

> Contrary to Cadbury's assertion, Shahidi does not "specifically focus on the inclusion of WS-23 and/or WS-3 and menthol in Chewing Gum." In reality Shahidi is directed to a composition which includes two essential ingredients,

---

[2] The Court has omitted citations to fact statements throughout, although this opinion discusses specific fact statements where pertinent.

xylitol and copper bis-glycinate, and a number of optional, non-essential categories of ingredients including flavoring agents and cooling agents.

Shahidi labels both cooling agents and flavoring agents as non-essential categories of ingredients. With respect to flavoring agents, Shahidi discloses that the flavoring agent could be one flavoring agent or a mixture of flavoring agents. In this regard, Shahidi discloses menthol as one of 23 potentially compatible ingredients each of which could also be a compatible ingredient when mixed with another. Shahidi, therefore, suggests over a million flavoring agent combinations that would not include "menthol." Similarly, Shahidi discloses another optional category of ingredients, a cooling agent or a combination of cooling agents. Incorporating by reference at least five patents, each of which includes at least one cooling agent and many of which include a number of different cooling agents, Shahidi discloses a large number of cooling agent combinations that do not include WS-23. Therefore, the sheer **quantity of experimentation** necessary to arrive at the combination of WS-23 and menthol is extensive. *See In re Goodman*, 11 F.3d 1046, 1052 (Fed. Cir. 1993) (finding that the method "would have required extensive experimentation that would preclude patentability").

Indeed Shahidi does not contain any **working examples** that include either WS-23 or menthol. Therefore, Shahidi provides **no direction or guidance** to select WS-23 from the large grouping of optional cooling agents, and menthol from another large grouping of optional flavoring ingredients, much less combining the two in a chewing gum composition as set forth in Claim 34.

Additionally, Shahidi incorporates by reference [the Rowsell patent]. Rowsell is directed to replacements for menthol, not combinations with menthol. In fact, the performance of WS-23 in combination with menthol in chewing gum applications would not have been **predicted** by one of ordinary skill in the art. Thus, the **state of the prior art** was such that one skilled in the art would not look to combine WS-23 and menthol as required by Claim 34.

Contrary to Cadbury's assertion, Shahidi would not enable one of ordinary skill in the art to practice the invention of Claim 34 without undue experimentation. There is ample evidence that: (1) extensive experimentation would be necessary; (2) Shahidi offers no direction or guidance toward the invention of Claim 34; (3) Shahidi contains no working examples containing WS-23 or menthol; (4) the state of the prior art was such that one skilled in the art would not look to combine WS-23 and menthol as required by Claim 34; and (5) the performance of the invention of Claim 34 was unpredictable in view of the prior art. Simply put, one of ordinary skill in the art would not have been able to practice the invention of Claim 34 from Shahidi's disclosure. Numerous questions of material fact exist that preclude summary judgment of invalidity.

Pl. Summ. J. Mem. at 12-14.

In the first paragraph of Wrigley's argument, Wrigley focuses on the fact that Shahidi does not specifically highlight the inclusion of either WS-3 plus menthol or WS-23 plus menthol, or both. As the June Order noted, the Federal Circuit has "reject[ed] the notion that one [of a number] of ingredients cannot anticipate because it appears without special emphasis in a longer list." June Order at 27 (citing *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005)). In rejecting the argument, the *Perricone* Court cited *Hewlett-Packard v. Mustek Sys., Inc.*, in which the Federal Circuit stated: "The anticipation analysis asks solely whether the prior art reference discloses and enables the claimed invention, and not how the prior art characterizes that disclosure or whether alternatives are also disclosed." 340 F.3d at 1324 n.6.

The better argument, at least conceptually, was in the second paragraph quoted above. That argument also relates to the number of ingredients mentioned in the Shahidi patent. The argument is that the long list of ingredients, in conjunction with Shahidi's teaching that the listed ingredients could be mixed with one another, means that the sheer quantity of experimentation necessary to arrive at the combination of menthol and WS-23 militates against enablement. Specifically, Wrigley points out that with 23 ingredients that could be combined with one another, there would be over one million combinations of ingredients (without menthol). The argument is clever, but ultimately unpersuasive, as it elides critical distinctions and does not speak to Wrigley's summary judgment burden on the enablement question.

In support of the million-plus figure, Wrigley cited to Paragraph 12[3] of its L.R. 56.1 Statement of Additional Facts. The fact statement in turn cites the declaration of an expert witness, Dr. Craig B. Warren. But Warren's declaration is conclusory and therefore was disregarded under Federal Circuit law. "Conclusory expert assertions cannot raise triable issues

---

[3] Actually it pointed to Paragraph 17, but Paragraph 12 contained the pertinent information and was cited in the immediately preceding sentence in the brief, so that the information was immediately at hand.

of material fact on summary judgment." *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008); *In re Buchner*, 929 F.2d 660, 661 (Fed. Cir. 1991) (ruling that "an expert's opinion on the ultimate legal issue [of enablement] must be supported by something more than a conclusory statement.").

Wrigley is correct, of course, that extensive experimentation militates against enablement. *Chugai Pharm.*, 927 F.2d at 1213; *Wands*, 858 F.2d at 737. Although Wrigley has not described, and the cited portion of the Warren declaration does not explain, how the million-plus estimate was derived, it appears that Wrigley based its estimate on the undefended assumption that a person of ordinary skill in the art would seek to blend a complex concoction of ingredients. Specifically, by assuming that a gum maker would use 11 or 12 ingredients, drawn from a pool of 23 possible ingredients, there would indeed be well over a million combinations of ingredients. That number, then, could have been obtained by anyone with a scientific calculator or a willingness and inclination to spend some time doing factorials by hand—the patent law inquiry relates to how one of *ordinary skill in the art* would have perceived the list of ingredients. Instead, the million-plus figure, without more, indicates how much experimentation might be necessary for an average person to make the claimed invention if 23 vials were laid before her. Skill in the art serves a gap-filling role when reading a prior art patent: "[A] specification itself * * * [need not] necessarily describe how to make and use every possible variant of the claimed invention, for the artisan's knowledge of the prior art and routine experimentation can often fill gaps, interpolate between embodiments, and perhaps even extrapolate beyond the disclosed embodiments, depending on the predictability of the art." *AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003). Again, regardless of the number of *possible* combinations, Wrigley had to show, in order to stave of summary judgment

using this *Wands* factor, that the sheer quantity of experimentation for a person of *skill in the art* would be particularly high. See *Wands*, 858 F.2d at 740 ("No evidence was presented by either party on how many hybridomas would be viewed by those in the art as requiring undue experimentation to screen. However, it seems unlikely that undue experimentation would be defined in terms of the number of hybridomas that were never screened."); *cf.* also *id.* at 737 (noting that the "test is not merely quantitative, since a considerable amount of experimentation is permissible").

And Wrigley did not show that for one skilled in the art, the amount of experimentation would be particularly high. In fact, one skilled in the art may well have crossed several ingredients off the list altogether (*cf. AK Steel Corp.*, 344 F.3d at 1244), or determined that combining 11 or 12 different ingredients—the number of ingredients drawn from a pool of 23 to arrive at the million-plus figure—would have been less than ideal in a chewing gum. That conclusion might have followed quite naturally in light of the state of the prior art (another *Wands* factor), which explicitly singles out WS-3 and WS-23 as promising ingredients. See June Order at 5; *id.* at 23 (discussing *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1379 (Fed. Cir. 2001)); see also *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1365 (Fed. Cir. 2006) (discussing "professional journal[]" articles in the context of an enablement analysis). Likewise, as the Court pointed out in the June Order (see *id.* at 22), the Rowsell patent (which Shahidi incorporates) lists WS-23 as a *preferred* cooling agent. But the larger point is that Wrigley did not direct to the Court's attention meaningful evidence regarding the amount of experimentation, as it was required to do to defeat summary judgment. See *Contilli v. Local Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 724 (7th Cir. 2009). Wrigley offered only its conclusion about the number of possible combinations, and the record evidence before the Court

suggested that it would not take *undue* experimentation *for a person of ordinary skill in the art of making chewing gum* to make a gum with WS-23 and menthol. See also June Order at 24 (observing that Claim 34 does not mention "any special effect obtained through the combination of WS-23 and menthol"); *Mayo Found.*, 346 F.3d at 1055 ("The determination of what level of experimentation is 'undue,' so as to render a disclosure non-enabling, is made from the viewpoint of persons experienced in the field of the invention.").

Accordingly, the Court does not agree that Wrigley's citation (Wrigley Mem. at 4-5) to *Crown Operations* in its motion for reconsideration is "instructive." In *Crown Operations*, the parties offered competing testimony from expert witnesses about the quantity of experimentation that would have been necessary to practice the claimed invention. See *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1379 (Fed. Cir. 2002). The underlying technology in that case related to layered films used to create safety and solar control glass. The disputed issue related to whether or not a person of ordinary skill in the pertinent art could have overcome "any ambiguities in the wave index calculation without undue experimentation," which was the key question for enablement in that case. See *id.* But as the Federal Circuit's analysis in that case shows, the experts provided more than their own conclusions in creating the factual dispute. *Id.* at 1379-81.

In sum, there was no way for a finder of fact reasonably to draw the inference that, from the standpoint of a person of ordinary skill in the art, the "sheer quantity of experimentation necessary to arrive at the combination of WS-23 and menthol is extensive." Wrigley Summ. J. Mem. at 13. A reasonable trier of fact could not have drawn the inference because Wrigley did not present sufficient record evidence to draw it.

Wrigley's argument in the third paragraph of its summary judgment argument is simple: because there were no working examples in Shahidi of WS-23 and menthol, Shahidi does not provide direction or guidance, a *Wands* factor that militates against enablement. The problem for Wrigley is that working examples is not the *sine qua non* of the direction-or-guidance inquiry, as these are separate *Wands* factors. Wrigley effectively seeks to use the lack of working examples twice—once as its own factor and then second to support the conclusion that Shahidi offers *no* direction or guidance. But that argument seeks to squeeze out too much from the lack of working examples, particularly because "[w]orking examples are desirable in complex technologies * * *." *In re Strahilevitz*, 668 F.2d 1229, 1232 (C.C.P.A. 1982). In contrast, as the Court noted elsewhere in the June Order, Shahidi "lists WS-23 along with WS-3 as a 'particularly preferred' cooling agent. The Rowsell patent, incorporated by reference, instructs that WS-23 can be used in amounts from 0.1 to 5 percent by weight in chewing gum." *Id.* at 27 (citations omitted). And the undisputed facts revealed that the gum recipes in Claim 34 are "conventional" (Wrigley Resp. Cadbury SOF [207] ¶ 12[4]); hence the absence of working examples, standing on its own, was not sufficient to create a genuine issue of material fact.

In Wrigley's fourth paragraph of summary judgment argument, Wrigley contends that "Rowsell is directed to replacements for menthol, not combinations with menthol" and that "the performance of WS-23 in combination with menthol in chewing gum applications would not have been predicted by one of ordinary skill in the art." Accordingly, the argument goes, one

---

[4] Although Wrigley responded "[d]isputed as stated" to Cadbury's fact statement, Wrigley then failed to say exactly what about Cadbury's statement it took issue with. Just as summary judgment is the "put up or shut up" moment in the life of a case when it comes to marshaling evidence (*e.g.*, *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009)) through its L.R. 56.1 statements, a party that denies a fact statement must state what it is denying and then cite record evidence that supports the denial. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000).

skilled in the art would not have looked to combine WS-23 and menthol, and the performance of WS-23 in combination with menthol would not have been predicted.[5]  For this statement, Wrigley again relied on the declaration of Dr. Craig B. Warren.  See Wrigley SOAF [208] ¶ 18; *id.*, Ex. 6.  As for the Warren declaration, Wrigley points to Paragraph 28.  In Paragraph 28, Warren states that experts would have been "skeptical" of using WS-23 with menthol at the time Wrigley patented its invention.  But the "skepticism" was partially due to the cost of WS-23 as compared to WS-3, which does not speak to whether or not a person could build the invention.[6] *Celeritas Techs., Ltd. v. Rockwell, Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998) (teaching that a "reference is no less anticipatory if, after disclosing the invention, the reference then disparages it.").  And the other reason that Warren offered is that "WS-23 has a significantly lower cooling intensity than menthol and WS-3."  But the fact that there might have been better inventions is not a silver bullet on the question of whether one skilled in the art could make the invention without undue experimentation.[7]  The question is unpredictability, not inclination: "Enablement does not require an inventor to meet lofty standards for success in the commercial marketplace.  Title 35 does not require that a patent disclosure enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment absent a claim limitation to

---

[5] Predictability is one of the *Wands* factors, but Wrigley's arguments and underlying evidence more obviously speak to direction or guidance and the question of "teaching away," which the first paragraph of Wrigley's summary judgment argument, and the June Order, addressed.

[6] See also Wrigley SOAF [208], Ex. 10, at CA026055 and CA026137, which documents Wrigley cites in its statement of additional facts and which apparently supported Warren's declaration.  (It is unclear because Warren's declaration cited to "deposition exhibits" rather than the set of exhibits that was provided to the Court.)

[7] Note also that Wrigley's argument on enablement is a bit at war with itself: on the one hand, Wrigley argues in paragraph two of its summary judgment argument that there were over a million different combinations of cooling ingredients; on the other hand, Wrigley suggests in paragraph four that an inventor would look only to the ingredient with the right "cooling intensities."  This reinforces the importance of introducing evidence about the amount of experimentation necessary in terms of a person of ordinary skill in the art.

that effect." *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003); see also *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008) (stating in its *Wands* factor analysis that predictability or unpredictability relates to "the specific area of science or technology."); *id.* (discussing the unpredictable *properties* of enantiomers).

Also cited in support of the fourth paragraph (or rather cited in support of the fact statements that Wrigley cited in its summary judgment brief), is the Parrish article. According to Wrigley, the Parrish article teaches that one skilled in the art would not look to combine WS-23 and menthol. That is based on Wrigley's characterization of the article as describing "the disadvantages of menthol in consumer products." Again, for anticipation purposes, a prior art reference is no less anticipatory if it teaches away from it after disclosing and enabling it. *Cerleritas Techs.*, 150 F.3d at 1361. In any event, Wrigley reads the Parrish article for more than it is worth: the quoted text does not say something along the lines of "do not use menthol and WS-23." It says that menthol is used in "toilet preparations, confectionary, etc.," but has disadvantages. The language simply does not speak to the question of whether WS-23 is an exclusive substitute or an ingredient to be used in conjunction with menthol. The entire context of the Parrish article suggests that the authors were leaving the matter open, particularly given that Parrish intimates that there may be toxicity-related limitations of WS-23 and WS-3 when used for flavor modification and enhancement. Parrish Article at 2; see also *id.* ("[WS-23 and WS-3] provide a broad scope for innovation in the fields of foodstuffs * * *."). Wrigley's narrow reading of the Parrish article is not supported by the article's language.

Similar to its Parrish article argument, Wrigley submitted that Rowsell conceived of WS-23 as a replacement for Menthol rather than a compliment. Wrigley SOAF [208] ¶ 17 (citing Rowsell, 1:38-47). But the cited text in Rowsell does not support Wrigley's characterization:

> Although menthol is well established as a physiological coolant its use, in some compositions, is *circumscribed* by its strong minty odour.
>
> The present invention is based on the discovery that certain other organic compounds, which can be readily synthesized, have a physiological cooling effect similar to that obtained with menthol, but do not have the strong minty odour. * * * Such compounds therefore find utility as *additives* in a wide range of ingestible and topical compositions. * * *
>
> The compounds having a physiological cooling effect and utilisable in accordance with the present invention are amides of the formula * * * [formula omitted].

Rowsell, 1:33-47 (emphasis added). At best, the text Wrigley relies on is agnostic when it comes to combining menthol with WS-23.

In sum, the Court acknowledges that it might have said "dispositive" where it said "irrelevant," with respect to both the direction-or-guidance question and Wrigley's lack-of-special-emphasis argument. However, summary judgment was granted because, based on the briefs of the parties and the pertinent law, Wrigley failed to meet its summary judgment burden. The Federal Circuit teaches that "when an accused infringer asserts that a prior art patent anticipates specific patent claims, the infringer enjoys a presumption that the anticipating disclosure also enables the claimed invention." *Impax Labs., Inc. v. Aventis Pharm., Inc.*, 545 F.3d 1312, 1316 (Fed. Cir. 2008). And that enablement analysis had to be placed within the context of the invention itself. See, *e.g.*, *Novo Nordisk*, 424 F.3d at 1356 (considering how one of ordinary skill in the art would have understood "standard recombinant DNA techniques."). Because Wrigley failed to create a genuine issue of material fact, summary judgment on the issue of enablement was appropriate.

## 2. Wrigley Cannot Reclaim Now that which it Ceded at Summary Judgment

In opposing Cadbury's motion for summary judgment, Wrigley chose to fight only on the issue of enablement. The adversary system at once permits and requires parties to pick their

battles (*Allen Eng'g*, 299 F.3d at 1356), and it is plain that Wrigley made choices about its litigation strategy. While Wrigley fought Cadbury's argument that the Furman patent anticipated Claim 34 by arguing that Furman failed to disclose each of the Claim 34's limitations (Wrigley Summ. J. Mem. at 11), Wrigley opposed Cadbury's anticipation argument regarding the Shahidi patent on the question of enablement. Wrigley's motion for reconsideration argues that the Court failed to grapple with case law teaching that a prior art reference "must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'" Wrigley Mem. at 6-7 (quoting *Net MoneyIN, Inc. v. VeriSign, Inc.* 545 F.3d 1359, 1369 (Fed. Cir. 2008)). According to Wrigley, such precedent "highlights the Court's error in its anticipation ruling."

The Court respectfully disagrees: it was Wrigley's task to make its case and respond to Cadbury's arguments about why summary judgment was appropriate. See, *e.g.*, *Greenlaw*, 128 S.Ct. at 2564; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."); *cf.* also *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 24 (1913) (Holmes, J.) ("[T]he party who brings suit is master to decide what law he will rely upon."); *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1329 (Fed. Cir. 2009) (concluding that a litigant waived an issue when, in its summary judgment opposition, it "essentially conceded" that if one claim was invalid then other claims were invalid); *In re Cygnus Telcomms. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1356 n.3 (Fed. Cir. 2008) (waiver of issue before the Federal Circuit by failing to include the issue in its opening brief); *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1261 (Fed. Cir. 2007) (waiver of issue by limiting arguments in summary judgment brief).

Wrigley fought summary judgment only on the issue of enablement, and it was Wrigley's job to create a genuine issue of material fact on that issue. *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000). Under the Federal Rules of Civil Procedure, Wrigley cannot use a motion for reconsideration to change legal positions midstream by advancing a new argument. *Jolly Group, Ltd. v. Medline, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).

Having ceded a portion of the anticipation inquiry, Wrigley had to present to the Court "persuasive evidence" of non-enablement. *Impax Labs.*, 545 F.3d at 1316. Wrigley failed to do so, and therefore summary judgment was appropriate.

### B. Obviousness

Wrigley argues that the Court committed legal error by requiring that the novel aspect of Claim 34 be the "sole reason for Cadbury's copying and both Wrigley and Cadbury's commercial success." Further Wrigley argues that the Court misallocated burdens, failed to draw reasonable inferences in Wrigley's favor, and ignored Wrigley's evidence. That characterization is at odds with the June Order. See *id.* at 30-42. The Court's ruling was issued after studying the evidence presented by the parties; the Court concludes that the June Order demonstrates the Court's careful consideration of the parties' properly presented arguments. Although Wrigley's motion for reconsideration nominally focuses on perceived errors in the Court's analysis, the motion in essence seeks to re-hash rejected arguments.[8] The Court will let the opinion speak for itself.

---

[8] Wrigley's argument that the Court failed to consider some of the evidence in its favor contends that the Court failed to discuss the declarations of Roberts or Warren. However, Wrigley, too "did not mention the declarations of Wrigley's experts" (Wrigley Mem. at 12 n.8) in its summary judgment brief. Nor was it error not to specifically discuss in the June Order an argument that was raised in a single footnote. See also *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (ruling that "arguments raised in footnotes are not preserved" and collecting cases); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 765 n.6 (N.D. Ill. 2008).

## IV. Conclusion

For the foregoing reasons, Wrigley's motion for reconsideration [296] is respectfully denied.

Dated: March 30, 2010

_____
Robert M. Dow, Jr.
United States District Judge